Luis Meaux, Plaintiff and Appellant, *v.* Heirs of José Rodríguez Pérez, Defendants and Appellees.

No. 9197.  Argued February 14, 1946.—Decided February 25, 1946.

*A. Díaz Viera* and *R. Díaz Collazo* for appellant.  *M. Benítez Flores* for appellee José Manuel Rodríguez.  *Félix Ochoteco, Jr.,* and *Luis E. Dubón* for remaining appellee heirs.  *Otero Suro & Otero Suro* for the Judicial Administrator.

Mr. Justice Snyder delivered the opinion of the court.

José Rodríguez Pérez died on November 24, 1940.  On February 11, 1941, Luis Meaux sued the heirs of Rodríguez for collection of money, alleging that on October 28, 1940, Rodríguez had signed as maker a promissory note for $7,000 bearing interest at six per cent; that the note provided that it was payable to Meaux and matured on January 28, 1941; and that Meaux had made a demand on the heirs for payment, which had been refused.  The defendants answered the complaint, alleging that the note was forged and that the decedent had never owed the plaintiff any money.  After a trial on the merits, the district court entered judgment dismissing the complaint and awarding costs to the defendants and attorney's fees of $750 to counsel for one of the defendants and $1,500 to counsel for the other defendants.  The plaintiff appealed from that judgment.

The plaintiff assigns as errors: (1) the weighing of the evidence by the district court; (2) the award of costs and

attorney's fees. As to the first error, the record is repleted with evidence which abundantly sustains the conclusion of the lower court that the note was forged. We need examine only some of the highlights of the case to be satisfied of this fact.

■ After the suit was filed, the court on motion of the defendants ordered the plaintiff to deposit the original note for examination ·by an expert. Thereafter, the plaintiff learned that an expert who had examined the note was of the opinion that it was forged. Hoping to avoid the effect of this expert's testimony and not knowing that the defendants had made photostatic copies of the original note, the plaintiff withdrew the note he had deposited and at the trial offered in evidence as the alleged original note another document which is different on its face in several respects when compared with a photostatic copy of the original note.

The plaintiff testified that Juan Rodríguez had typed the text of the note. Rodríguez testified that it was impossible for him to tell if the note in evidence had been typed by him. The testimony of Rodríguez would therefore be of no importance, except for the fact that other testimony showed that he obtained an order to sell machinery to the decedent, which led to a claim by him against the estate. The connection of Rodríguez with the case became evident when the defendants offered convincing expert testimony that the order in question, undoubtedly signed by the decedent, was used to forge the signature of the decedent on the note originally deposited in court by tracing his signature thereon.

The note offered in evidence by the plaintiff was not the same note which the plaintiff submitted for examination by the defendants and later withdrew. But this second note was likewise a forgery. Here both the expert testimony and a physical examination of the note show beyond question that the signature on this second document was traced from the signature of the decedent in another suit filed by him. Sig-

nificantly enough, the original record in that law suit had been in the possession of the plaintiff, who obtained it for examination by a motion filed therein.

Beyond the proof that the note was forged, the testimony eminently justified the finding of the district court that the obligation for which it was allegedly issued never existed. The plaintiff testified that he furnished the decedent with $7,000 at the latter's request pursuant to an arrangement whereby the plaintiff would thereafter receive a proportionate share of the profits from loaning money to municipal employees by purchasing their salary checks, a business in which the decedent was engaged; and that the note was not actually to bear interest, the provision for interest having been inserted for just such circumstances as the present case. We thus see the plaintiff in his own testimony disclaiming the theory of his suit, which was that he had made a loan which bore six per cent interest.

Other phases of the plaintiff's testimony are equally dubious. He testified to extensive business transactions, but admitted he had no bank account. He claimed he delivered the $7,000 in question to the decedent in cash, consisting of four $500 bills, forty-nine $100 bills and five $20 bills, which he kept in a box at his home. He swore that he has filed income tax returns since 1938; but the records of the Treasury Department show that he has never filed a return.

On the other hand, the uncontradicted testimony was that the decedent, who was very frugal and conservative, could in October 1940 have borrowed $20,000 from his bank without any security. Yet, although he engaged in many substantial business operations, from 1935 until his death he borrowed no money from his bank. Moreover, in October, 1940, he had on deposit in his bank at one and one-half per cent interest $50,000 which he could have used instead of borrowing from the plaintiff and paying him six per cent. And when Rodríguez died on November 24, 1940, he had a $43,000 balance in his bank account and considerable other property.

Although the plaintiff testified he gave the decedent $7,000 in cash on October 28, 1940, the latter did not deposit any amount larger than $2,600 in his bank account during October, 1940. The decedent frequently discussed his affairs in detail with the manager of his bank but never mentioned this alleged deal. And he always did everything in connection with his substantial business of purchasing municipal salary checks personally without the intervention of the plaintiff or anyone else.

Far from finding any basis which would warrant our interference with the findings of the lower court that the note was forged and that no obligation of the decedent to pay any money to the plaintiff existed, we are unable to see how the district court could have reached any other result. The effort of the plaintiff to utilize the courts to consummate a fraudulent scheme which was ill-contrived and clumsily executed stands clearly exposed.

The second error needs little consideration. The conduct of the plaintiff must be characterized by a much harsher word than stubbornness. *Olmedo* v. *Rivera, ante,* p. 45. The district court was fully justified in awarding costs and attorney's fees in the amounts indicated. And the record shows no justification whatsoever for this appeal. Accordingly, we shall grant the prayer of the defendants for costs and attorney's fees in this court.

The judgment will be affirmed, with costs and attorney's fees of $500 in this court.